## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**BONITA ANISKEVICH,**                    :

    **Plaintiff,**                    :

                     **CIVIL ACTION NO. 3:08-0966**

    **v.**                    :

                     **(MANNION, M.J.)**

**BLUE RIDGE PRESSURE**                    :
**CASTINGS, INC.,**

                    :

    **Defendant.**

## <u>MEMORANDUM AND ORDER</u>[1]

Before the court is defendant Blue Ridge Pressure Castings, Inc.'s motion for summary judgment. (Doc. No. 41). For the reasons set forth below, the court will GRANT the motion.

## I. PROCEDURAL BACKGROUND

On or about November 20, 2007, plaintiff Bonita Aniskevich originally filed her three-count complaint in the civil division of the Court of Common Pleas of Carbon County, Pennsylvania. (Doc. No. 1 at 1). She asserted claims under the Americans with Disabilities Act (count 1 or the "ADA Count"), under

_____

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

the Pennsylvania Human Relations Act (count 2 or the "PHRA Count"), and under section 301 of the Labor Management Relations Act (count 3 or the "LMRA Count"). Each count was brought against both her employer, defendant Blue Ridge Pressure Castings, Inc. ("Blue Ridge"), and against her union, defendant United Auto Workers Local 1098 ("Local 1098"). (Doc. No. 1 at 5, 11). The plaintiff argues that after long service on the job her health began to decline and she suffered an on-the-job injury. (Doc. No. 35 at 1). She sought accommodations from her employer, including regular rest periods during the business day and training for a different position, but these efforts were rebuffed by her employer, defendant Blue Ridge. Moreover, during these negotiations with Blue Ridge, plaintiff maintained that Local 1098, her union, failed to represent her in good faith.

Defendant Blue Ridge removed the action from state court into the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1 at 1). Once in federal court, plaintiff filed an amended complaint and a second amended complaint. (Doc. No. 8 & Doc. No. 11). Thereafter, Judge Ditter, who presided over this action in the Eastern District, transferred this case to the United States District Court for the Middle District of Pennsylvania because Carbon County is in the Middle District, not the Eastern District.

2

(Doc. No. 14). Once transferred to this district, this case became ultimately assigned to the undersigned. (Doc. No. 23). Subsequently, defendant Blue Ridge filed an answer to the second amended complaint, (Doc. No. 16), and defendant Local 1098 filed a summary judgment motion, (Doc. No. 28), which this court granted, thereby terminating defendant Local 1098 from this action. (Doc. No. 43).

On May 29, 2009, defendant Blue Ridge filed a summary judgment motion, (Doc. No. 41), with a statement of facts, (Doc. No. 41-3), and supported by a memorandum of law, (Doc. No. 42). Plaintiff responded with an opposition brief only, (Doc. No. 47), to which defendant Blue Ridge replied. (Doc. No. 48).

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute

is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). Where, for example, the non-movant opposes summary judgment merely by standing on its own pleadings, and offers no other evidence in regard to a contested material fact, then the movant's motion will be granted. *See First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) ("What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."); *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 575 (3d Cir. 1986).

## III. DISCUSSION

Defendant Blue Ridge is a job shop that engages in the design, production and delivery of aluminum die cast parts and components, largely for the automotive and truck industries. Def.'s Ex. A; (Doc. No. 41-4 at ¶2). From November 4, 1988 through May 30, 2008, plaintiff Bonita Aniskevich was employed as a "utility worker" at defendant Blue Ridge. (Doc. No. 41-3 at ¶ 35; Doc. 41-4 at ¶53). A "utility worker" at Blue Ridge is the basic laborer position that performs all secondary non-skilled and semi-skilled job duties in the facility supporting the processing of die cast parts.[2] Def.'s Ex. A;(Doc. 41-4 at ¶6). Since 2000, the utility worker position at Blue Ridge required standing, moving and walking one hundred percent of the time while working. *Id.* at ¶12.

In 2006, as a utility worker at Blue Ridge, plaintiff was assigned to operate two machines, and the operation of the two machines required her to go back and forth between them, and consequently, plaintiff did not have the opportunity to sit while she was working. Def.'s Ex. C; (Doc. 41-6 at 38).

---

[2] When a utility worker comes to work, the employee does not know what his or her job assignment will be because assignments are made based upon the operational needs of Blue Ridge and what parts are being manufactured at that time. *Id.* at ¶10-11.

From late 2005 through 2006, plaintiff was experiencing pain in the heel of her left foot while she was working.  Def.'s Ex. C; (Doc. No. 41-6 at 42-43). On April 26, 2006, plaintiff was released from work to get a cortisone shot in the heel of her left foot to help alleviate the pain. Def.'s Ex. F; (Doc. No. 41-8 at 1). On May 11, 2006, plaintiff was again released from work to go to the doctor for her heel pain, and it was determined she had plantar fasciitis, inflammation of tissue in the sole of the foot, and that she tore a tendon in the heel of her left foot. Def.'s Ex. C & G; (Doc. No. 41-6 at 46). Plaintiff then had two operations, on May 30 2006 and in the fall of 2006, on her heel to try and correct the injury. Def.'s Ex. C; (Doc. No. 41-6 at 47-48).

As a result of her heel injury, plaintiff had requested and was granted a period of medical leave of absence from May 30, 2006 through December 28, 2006.[3] Def.'s Ex. A; (Doc. 41-4). Towards the end of plaintiff's medical leave of absence, plaintiff presented defendant Blue Ridge with return-to-work

---

[3] During her leave of absence from Blue Ridge, plaintiff received (1) short term disability payments from June 6, 2006 through December 4, 2006, (2) employer-paid health insurance from May 30, 2006 though November 30, 2006, and (3) unemployment compensation benefits beginning on December 12, 2006. Plaintiff's employer-paid health insurance stopped consistent with the collective bargaining agreement between defendant Blue Ridge and United Auto Workers Local 1098. (Doc. No. 41-4 at ¶34). Plaintiff was offered COBRA coverage for her health insurance which she elected and paid for in December of 2006. *Id.* at ¶35.

medical releases. On November 27, 2006, plaintiff presented the first return-to-work medical release to Donna Correll, the individual in charge of human resources at Blue Ridge. Def.'s Ex. A; (Doc. No. 41-4 at ¶37). The medical release from Dr. Bernstein, a nerve surgery specialist, provided that plaintiff could return to work if she could sit and rest fifteen minutes for every hour of work. Def.'s Ex. I; (Doc. No. 41-8 at 4). Correll told plaintiff that Blue Ridge could not accommodate the medical restrictions because there was no sedentary work available at Blue Ridge, and that if she accommodated plaintiff's request, Blue Ridge would have to accommodate every request for sedentary work, which Blue Ridge could not do.[4] Def.'s Ex. A; (Doc. No. 41-4 at ¶37-38) & Def.'s Ex. C; (Doc. No. 41-6 at 52). Plaintiff was also told that she was a liability to Blue Ridge because of the pain she was experiencing and the medications she was taking. Def.'s Ex. R; (Doc. No. 41-9 at 3).

On December 19, 2006, Dr. Bernstein gave plaintiff a second return-to-work medical release that provided plaintiff could be released to work on December 28, 2006 "guarded." Def.'s Ex. J; (Doc. No. 41-8 at 4). Relying on

---

[4]Furthermore, when plaintiff presented the note to Correll, she reported that her foot had swelled so badly that she could not wash dishes, and had not been able to put up any Christmas decorations. Def.'s Ex. A; (Doc. No. 41-4 at ¶39).

plaintiff's explanation of the word "guarded," that plaintiff could not overdo it, overwork it or bump her foot, Correll allowed plaintiff to return to work effective December 28, 2006. Def.'s Ex. A; (Doc. No. 41-4 at ¶41). Accordingly, plaintiff worked December 28, 29, 30, 2006 and January 3, 2007. Def.'s Ex. A; (Doc. No. 41-4 at ¶43). However, during that time Correll attempted to contact Dr. Bernstein to determine what exactly "guarded" meant. Def.'s Ex. A; (Doc. No. 41-4 at ¶42).

On January 3, 2007, plaintiff presented a third return-to-work medical release, which provided plaintiff needed "guarded duty, as light ambulatory as possible." Def.'s Ex. A & L; (Doc. No. 41-4 at ¶44). On January 3, 2007, Correll attempted to contact Dr. Bernstein again, and spoke to him at the end of the day. (Doc. No. 41-4 at ¶45-47). Following her conversation with Dr. Bernstein, Correll called plaintiff and instructed her not to return to work until her foot healed. (Doc. No. 41-4 at ¶ 48). Plaintiff has not returned to work since January 3, 2007.

On January 29, 2007, Dr. Bernstein's doctor's note indicated that "patient [plaintiff] continues sedentary duty." Def.'s Ex. M; (Doc. No. 41-8 at 8). On March 12, 2007, Dr. Bernstein's, fourth return-to-work medical release provided that patient could return to work if allowed to rest her left limb ten

minutes per hour, and sitting position if available. Def.'s Ex. N; (Doc. No. 41-8 at 9). On April 10, 2007, Dr. Sorrento provided plaintiff a fifth return-to- work medical release that stated plaintiff could return to work if allowed to rest left foot for ten minutes per hour in sitting position while working. Def.'s Ex. O; (Doc. No. 41-8 at 10). As a result of the April 10, 2007 medical release, by letter dated April 20, 2007, Correll informed plaintiff that Blue Ridge did not have work available with the restrictions Dr. Sorrento provided and, she further stated "Please keep us advised as you have been of any updates. We will continue to evaluate the restrictions. We look forward to your return to work." Def.'s Ex. P; (Doc. No. 41-8 at 12).

On April 17, 2007, plaintiff filed an application for social security disability insurance benefits ("SSDI"), and on August 14, 2007, it was determined that plaintiff did not qualify for SSDI. Def.'s Ex. R; (Doc. No. 41-9 at 1) & Def.'s Ex. T; (Doc. No. 41-9 at 22).

On September 26, 2007, plaintiff filed an appeal to the Social Security Administration ("SSA"). In the "Disability Report-Appeal," plaintiff stated: "the pain in my feet is worse than before. I have required more medications." Def.'s Ex. U; (Doc. No. 41-9 at 27). In response to the question, "How do your illnesses, injuries or conditions affect your ability to care for your personal

needs?," plaintiff responded, "On a good day I can care for my personal needs. On a bad day, I cannot. On bad days, I pretty much stay in bed and don't do much of anything." Def.'s Ex. U; (Doc. No. 41-9 at 31). Moreover, in response to the question,"What changes have occurred in your daily activities since you last completed a disability report?," plaintiff responded:

> "My whole lifestyle has changed. I used to work and be self supporting. I used to cut my grass for my home and walk my dog. Now, I just go get my prescription medications, go to MDs, etc. *I need to wear sneakers all the time and keep my feet propped up.* My daughter helps me by doing the laundry and cleaning the house. *My feet hurt all the time and it feels as if there is railroad spike in my heel and back of foot. I have a burning pain all the time and need to keep my foot elevated. I cannot walk around the block.* Normally, I got to bed by 10 pm and remain in bed to 10 am. I feel tired all of the time because of my medication. I have to lay down with pillows under my feet so they do not touch the bed. Some days I cry all day as a result of my problems. Temperature extremes affect my feet."

*Id.* (emphasis added).

On December 12, 2007, the Office of Disability Adjudication and Review mailed to plaintiff a "Notice of Attorney Advisor Decision - Fully Favorable" that informed plaintiff that she received a fully favorable medical decision, and that she had met the medical requirements for SSDI. Def.'s Ex. V; (Doc. No. 41-9 at 34).The decision by the Attorney Advisor indicated he found the plaintiff had the following severe impairments: bilateral foot neuropathy, sciatic

neuralgia, tarsal tunnel syndrome, degenerative disc disease and plantar fasciitis. Def.'s Ex. V; (Doc. No. 41-9 at 38). Moreover, the Attorney Advisor found that plaintiff had the *residual functional capacity to perform sedentary work* except *with an inability to sit, stand or walk for more than a few minutes at a time*. *Id.* (emphasis added). The Attorney Advisor explained he reached this finding as follows:

"The claimant is unable to sustain work activity on a regular and routine basis as a result of pain in the lower extremities. The claimant was originally diagnosed with plantar fasciitis for which she underwent surgery in May, 2006 with continuing symptoms EMG study later revealed tarsal tunnel syndrome bilaterally with was also treated surgically in October, 2006.

Since the above surgical procedures the claimant has continued to complain of consistent, severe and unrelenting pain in the lower extremities. Treatment modalities including physical therapy, narcotic medication and electrical stimulation have not resolved the claimant's symptoms. Several treating physicians, including Dr. Dean Sorrento and Dr. Rosalee Rehrig, have commented in treatment notes that the claimant has a *very painful condition with a poor prognosis*. The undersigned also notes that claimant has additional problems in the low back which required an epidural steroid injection.

Dr. Barry Bernstein completed a physical capacity evaluation indicating that the claimant has severe limitations in walking and standing. Dr. Rehrig added that the claimant could only sit for a few minutes at one time. The claimant's subjective complaints, as set forth in the documentary evidence, are consistent with the medical opinions and are of such a degree of severity that the claimant would not be able to perform work activity.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment(s) could reasonably be expected to produce the alleged symptoms, and the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible."

Def.'s Ex V; (Doc. No. 41-9 at 38-39).

### A. ADA and PHRA Claims

The "analysis of an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996)). Therefore, the court will consider both claims together. *Cf. Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 n.6 (3d Cir. 2004).

The ADA provides, in part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[5] 42 U.S.C. §12112(a). In reviewing a motion for summary judgment to determine if there is a genuine issue of material fact concerning whether an employer illegally discriminated

---

[5]A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §12111(2). The parties do not dispute that the defendant is a "covered entity."

13

against an employee, the court applies the test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Raytheon*, 540 U.S. at 49 n.3; *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (citing *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 667-68 (3d Cir. 1999)). The *McDonnell Douglas* test "establishe[s] an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases."[6] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)) (internal omission in original). To succeed on an ADA disparate-treatment claim under the *McDonnell Douglas* test, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A *prima facie* case requires the plaintiff to establish three (3) elements:

1. She is a disabled person within the meaning of the ADA;
2. She is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and,
3. She has suffered an otherwise adverse employment decision as a result of discrimination.

---

[6]The burden of persuasion always remains upon the plaintiff. *Reeves*, 530 U.S. at 143 (citing *Burdine*, 450 U.S. at 254).

*Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) citing

*Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

If the plaintiff makes her *prima facie* showing, there is a presumption of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506 (citing *Burdine*, 450 U.S. at 254). The burden then shifts to the defendant to rebut the presumption by "produc[ing] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142 (citing *Burdine*, 450 U.S. at 254). The defendant's burden is "relatively light." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). If the defendant produces evidence of a nondiscriminatory reason for the challenged conduct, the presumption "drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 255).

It appears that both parties concede that the plaintiff satisfies the first element of her *prima facie* case, namely, that she is disabled within the meaning of the statute. This case really revolves around the second element, whether or not the plaintiff is qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer. The determination of whether an individual with a disability is qualified is made at

the time of the employment decision. 29 C.F.R., pt. 1630 APP at 353-54. In order to make a determination of whether the individual is a "qualified individual" a two (2) prong test is used. First, the court must determine whether the individual satisfies the requisite skill, experience, education and other job related requirements of the employment position, that such individual holds or desires. *See* 29 C.F.R., pt. 1630, APP. §1630.2(m). Second, it must determine whether the individual with or without reasonable accommodation, can perform the essential functions of the position held or sought. *Id*. As there is no dispute that plaintiff satisfies the first prong, the court will turn to the second prong.

In the second prong, it's required that the individual, with or without reasonable accommodations, can perform the essential functions of the position held or sought. *Deane v. Pocono Medical Center*, 142 F.3d 138, 145 (3d Cir. 1998). In this regard, the defendant argues that plaintiff's ADA and PHRA claims are "precluded by judicial estoppel as a result of assertions made by plaintiff in her social security disability application and appeal and findings of fact by the Social Security Administration," and alternatively, plaintiff's ADA and PHRA claims "should be dismissed because there was no reasonable accommodation that would enable plaintiff to perform all of the

essential functions of her position." The court will consider each of these arguments below.

The general concept of "judicial estoppel" is to protect the integrity of the judicial system and preclude a party from adopting a position that is inconsistent with a stance taken in prior litigation. *McNemar v. Disney Stores, Inc.*, 91 F.3d 610 (3d Cir. 1996); *Hindman v. Greenville Hospital Systems*, 947 F.Supp. 215 (D.S.C. 1996). Equitable estoppel can be invoked by the district court in its discretion. *McNemar*, 91 F.3d at 617. In *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999), the Supreme Court addressed the issue of whether or not someone who has applied for SSDI benefits, claiming total disability, is barred or estopped from bringing a suit under the ADA.

In *Cleveland*, the plaintiff suffered a stroke and lost her job. As a result, she requested and obtained SSDI, claiming that she was unable to work due to her disability. Prior to actually receiving the SSDI award, she filed suit under the ADA contending that her former employer had discriminated against her based upon her disability. The district court granted summary judgment in favor of the employer concluding that the plaintiff's SSDI claim that she was totally disabled, estopped her from proving an essential element of her ADA

claim, namely, that she could perform the essential functions of her job, at least with "reasonable . . . accommodations."

The court held that pursuit and receipt of SSDI benefits does not automatically estop a recipient from pursuing an ADA claim or erect a strong presumption against the recipient's ADA success. However, to survive a summary judgment motion, an ADA plaintiff cannot ignore her SSDI contention that she was too disabled to work, but must explain why that contention is consistent with her ADA claim that she can perform the essential functions of her job, at least with reasonable accommodations. *Cleveland, 526 U.S. at 795*.

The court in *Cleveland* stated:

". . .in some cases, an earlier SSDI claim may turn out genuinely to conflict with an ADA claim. Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an essential element to (her) case, and on which (she) will bear the burden of proof at trial.' *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability" -- that is, a person "who, with or without reasonable accommodations, can perform the essential functions" of her job. 42 U.S.C. §12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case, at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

*Cleveland,* 526 U.S. at 805-06.

When faced with the plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistencies with the necessary elements of the ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant reasonable jurors concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job with or without "reasonable accommodations." Id. at 807.

In the instant case, defendant argues that plaintiff's present assertion that she is a qualified individual under the ADA clearly conflicts with her prior assertions in the SSA proceedings that indicate she was too disabled to work. Specifically, plaintiff cites to the following portions of plaintiff's SSDI application and appeal:

"She became unable to work because of her condition as of May 29, 2006.

As of April 2, 2007, she could not stand or sit or walk for long periods of time & pain & nerve medicine make [her] shaky and sleepy. Even short periods of movement irritate the bad areas causing very bad pain in feet & back.

While she used to be self-supporting [and work], now 'I just go get my prescription medications, go to MDs, etc. I need to wear sneakers all the time and keep my feet propped up . . . My feet hurt all the time and it feels as if there is a railroad spike in my heel and back of my foot. I have a burning pain all the time and need to keep my feet elevated. I cannot walk around the block.'"

(Doc. No. 42 at 7). Defendant also cites to the following SSA findings:

19

"Plaintiff has the residual functional capacity to perform sedentary work except with an inability to sit, stand or walk for more than a few minutes at a time.

Plaintiff is unable to sustain work activity on a regular and routine basis as a result of pain in the lower extremities.

Since the [2006 surgical procedures] plaintiff has continued to complain of consistent, severe, and unrelenting pain in the lower extremities.

Dr. Barry Bernstein completed a physical capacity evaluation indicating that the claimant has severe limitations in walking and standing.

The plaintiffs subjective complaints, as set forth in documentary evidence, are consistent with the medical opinions and are of such a degree of severity that the claimant would not be able to consistently perform work activity."

*Id.* at 7-8. Furthermore, defendant argues that because plaintiff testified at her deposition that her current medical condition is the same as it was on January 3, 2007, this further indicates plaintiff's assertions concerning her medical condition to the SSA accurately describe the plaintiff's medical condition on January 3, 2007.

The court agrees with defendant and finds that plaintiff's previous position, that she was too disabled to work due to her painful medical condition, and her present position, that she is a "qualified individual" under the ADA, appear to contradict one another. Plaintiff's submissions to the SSA

20

which refer to her constant pain, the need to elevate her feet, inability to work anymore, and the fact that her medications make her shaky and sleepy, conflict with a finding that she is a "qualified individual," or that she would be able to perform the essential functions of her job, with or without reasonable accommodation.

However, in opposition to defendant's motion for summary judgment, the plaintiff, who only submitted a brief in opposition, fails to respond to defendant's judicial estoppel argument or offer any explanation for why her two positions are nonetheless consistent with one another. Given that plaintiff is represented by counsel, it could be construed that plaintiff's decision not to specifically respond to defendant Blue Ridge's judicial estoppel argument indicates an intention to waive her claim in regard to the ADA and PHRA claims against Blue Ridge. Moreover, plaintiff does not argue or point to any facts that indicate plaintiff was not too disabled to work with or without a reasonable accommodation. As plaintiff has offered no explanation for her conflicting positions, and the record is replete with indications that the plaintiff is <u>completely and totally disabled</u> and has been since, at least, May 30, 2006, the court finds that plaintiff may be estopped from bringing her ADA and PHRA claims. To put it another way, plaintiff has not come forward with

evidence and has merely stood on her own pleadings, which is insufficient at the summary judgment stage. *See First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968); *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 575 (3d Cir. 1986).

Alternatively, defendant argues that even if plaintiff was not estopped, plaintiff's ADA and PHRA claims "should be dismissed because there was no accommodations that would enable plaintiff to perform all of the essential functions of her job." (Doc. No. 42 at 11).

An employer discriminates against a qualified individual when it does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. §12112(b)(5)(A). "Essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. §1630.2(n)(1); *see Id.* §1630.2(n)(2), (3) (discussing criteria by which to determine essentiality). "Reasonable accommodation," as pertinent here, requires an employer to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." *Id.* § 630.2(o)(2). It includes restructuring the employee's job or modifying the employee's work schedule to enable the employee to continue working with her disability. *Id.* §1630.2(o)(2)(ii); see "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 C.F.R. pt. 1630, app. ("In general, an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities."). An extended leave of absence may also be a reasonable accommodation under certain circumstances, but not if it is open-ended and indefinite. *Id.* pt. 1630, app.; *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the *near* future.") (emphasis added) (citing *Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998)); *Walton*, 168 F.3d 670-71; *see Fogleman v. Greater Hazleton Health Alliance*, 122 Fed. Appx. 581, 585 (3d Cir. 2004) (not precedential) ("There is no evidence that

permits any conclusion other than that the requested leave was for an indefinite and open-ended period of time. This does not constitute a reasonable accommodation.") (citing *Rascon v. U.S. W. Communications, Inc.*, 143 F.3d 1324, 1334 (10th Cir. 1998); *Peter v. Lincoln Tech. Inst.*, 255 F.Supp.2d 417, 437 (E.D. Pa.2002)*. Furthermore, on the issue of reasonable accommodation, the plaintiff bears the burden of identifying an accommodation, the costs of which, facially do not clearly exceed its benefits. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (citing *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 670 (3d Cir. 1999)).

Defendant and plaintiff agree that being able to stand is an essential function of a utility worker at Blue Ridge.[7] (Doc. No. 42 at 12). Assuming plaintiff's argument is that she could perform her job with a reasonable accommodation of ten to fifteen minute breaks per hour, defendant argues that there are no positions at Blue Ridge that would allow her to sit ten to fifteen minutes per hour and still perform her job.[8] *Id.* Thus, defendant argues

---

[7]Defendant further argues that if a utility worker was not required to stand, it would fundamentally alter the nature of the utility worker position, which the ADA does not require an employer to do. (Doc. No. 42 at 13).

[8]Defendant argues that Blue Ridge has experimented with an accommodation like this in the past and it resulted in two people doing the job of one person, thereby cutting productivity in half, and therefore, they cannot accommodate a sitting/standing restriction. Regardless, plaintiff does not

the ADA claim must fail because there is no reasonable accommodation available for plaintiff to be able to perform the essential functions of her job. *Id.* at 14.

In opposition to defendant's argument, plaintiff argues a reasonable accommodation would have been leave or, more specifically, a medical leave of absence. (Doc. No. 47 at 15). However, plaintiff was granted a medical leave of absence that she had requested, from May 30, 2006 through December 28, 2006. Moreover, plaintiff remained an employee of Blue Ridge for two years, following the onset of her disability, until May 30, 2008, in accordance with the collective bargaining agreement that provides after one hundred and four weeks, the employee will no longer be considered an employee of Blue Ridge. *See* Def.'s Ex. B; (Doc. No. 41-5 at 6). Accordingly, the plaintiff was not entitled to any additional leave, after the two year period, and an indefinite period of leave is not a reasonable accommodation.[9] *See*

---

raise these regular and additional breaks as a reasonable accommodation.

[9] Moreover, plaintiff does not indicate that she would be able to perform the essential functions of her job in the near future, even if additional leave was available. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("The federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the *near* future.")

*Fogleman v. Greater Hazleton Health Alliance*, 122 Fed. Appx. at 585.

In addition, plaintiff appears to have abandoned her previous positions that ten to fifteen minute breaks per hour is a reasonable accommodation,[10] or that a reasonable accommodation may have been to train plaintiff to do a different position at Blue Ridge that would allow her to sit while working. Consequently, plaintiff has again failed to put forth any evidence to support a finding that she could perform the essential job functions with or without reasonable accommodation.

As plaintiff has not met her burden of demonstrating that she is a qualified individual by putting forth evidence, namely identifying a reasonable accommodation that would allow her to perform the essential functions of her job, the court finds summary judgment on plaintiff's ADA and PHRA claims is appropriate.[11]/[12]

---

[10] Assuming plaintiff had argued a reasonable accommodation would have ten or fifteen minute break per hour of work, it still appears that plaintiff was not capable of performing the essential functions of her job, as defendant submitted Dr. Bernstein's treatment notes which indicate these return-to-work medical releases were against medical advice, and were given to plaintiff because she insisted, incorrectly, that she had to go back to work or else she would lose her job. Def.'s Ex. K; (Doc. No. 41-8 at 6).

[11]The court finds plaintiff's remaining contentions, including that defendant did not earnestly engage in the "interactive process," defendant sought and was denied training in another job, and that plaintiff was hounded to return to work, are all without merit. Plaintiff does not offer, cite or indicate

## B. LMRA Claim

Plaintiff's amended complaint alleges that defendants violated section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185. *See* Doc. No. 11 at 11. A union member will often assert a claim for breach of the duty of fair representation (owed by the union) in combination with a claim against his or her employer under the LMRA, i.e., a so-called "hybrid" claim. A hybrid claim contains two causes of action that are inextricably intertwined: (1) a breach of duty by the union and (2) the employer's breach of the collective bargaining agreement. *See DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 164 (1983).* Here, plaintiff alleges that the union, Local 1098's, actions were perfunctory and in bad faith, and that defendant Blue Ridge discharged plaintiff in violation of her rights under the collective bargaining agreement. *See* (Doc. No. 11). As the court previously held that the union, Local 1098, did not breach its duty of fair representation, (Doc. No. 43), plaintiff cannot maintain her LMRA claim against defendant Blue Ridge.

---

any facts or evidence that support these contentions, and the court finds the record does not reflect these unsupported assertions.

[12]The court notes that plaintiff's argument that leave is a reasonable accommodation further demonstrates that her position in the SSA proceedings is inconsistent with her being a "qualified individual" for purposes of the ADA.

*DelCostello*, 462 U.S. at 165. (To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union)(internal citations and quotation marks omitted). Accordingly, the court will grant summary judgment in favor of defendant Blue Ridge on this claim as well.

## IV.    CONCLUSION

For the reasons elaborated above, the Court **GRANTS** defendant Blue Ridge Pressure Casting Inc.'s motion for summary judgment (Doc. No. 41) is **GRANTED**. The final pretrial conference and trial are cancelled. The Clerk of Court is directed to close this case.

s/  *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATED: October 14, 2009**
O:\shared\MEMORANDA\2008 MEMORANDA\08-0966-02.wpd